FILED
U.S. DISTRICT COURT
W.D. N.Y.

AT ____ O'__ ____ M.
BY _____
TITLE _____

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

**REPORT AND
RECOMMENDATION**

v.

THOMAS POWERS,
                    Defendant.

07-CR-103(A)(M)

This case was referred to me by Hon. Richard J. Arcara for supervision of all

pretrial matters (Dkt. #9).  Before me is defendant's motion for suppression of physical evidence

and statements (Dkt. #19).  For the following reasons, I recommend that defendant's motion be

DENIED.

## BACKGROUND

On May 9, 2007 defendant was indicted for possession of child pornography, in

violation of U.S.C. §2252(A)(a)(5)(B) (Dkt. #10).   On September 5, 2007, defendant moved for

suppression of statements due to the absence of warnings under Miranda v. Arizona, 384 U.S.

436 (1966) (Dkt. #19, ¶¶12-13), and for suppression of physical evidence taken from his home

due to the absence of a warrant (Id., ¶¶13-14).

An evidentiary hearing was held before me on January 17, 2008, at which the

following witnesses testified:

**Donna L. Powers**

Mrs. Powers is defendant's wife.  They resided together at 348 High Street in Lockport, New York (T5).[1]  She testified that a few days before Christmas 2004, while using a computer that she shared with defendant, she noticed two pictures of nude children having sex (T12-13).  She spoke to defendant, and said "you could go to jail for this" (T13).  He told her that he had obtained the pictures from his nephew, and was attempting to get rid of them (Id.).

On December 27, 2004, Mrs. Powers went to the Lockport police station, where she executed an authorization allowing the police to search the house and remove "whatever documents or items of property whatsoever which they deem pertinent to their investigation" (T16-17; Government Ex. 1).  She testified that she understood she was thereby authorizing the police to view the contents of the computer (T15).  She then returned to her house, accompanied by her sisters and nephew, and the police followed (T18).  Although she could not recall whether or not she spoke to the police outside her house, on cross-examination she admitted that she may have told the police to wait outside until she talked to defendant (T26).  She went into the house and spoke to defendant, and her sister told the police to come in (T18-19, 26-27, 30, 32-33).  The officers entered the house within 10-15 minutes after she left the police station (T19).  The officer asked defendant if he knew why they were there and he responded "yeah, about the computer" (T20).  Defendant was then "told to take [the officers] to where the computer was" (Id.).  She testified that she never revoked her permission for the police to search (T21, 32).

---

[1]        "T" refers to the transcript of the January 17, 2008 evidentiary hearing (Dkt. #38).

**Officer Kevin Schrader**

Officer Schrader is employed by the Lockport Police Department (T33).  On December 27, 2004, he was instructed to proceed to defendant's residence at 348 High Street in Lockport (T33-34).  When he arrived at the home, Mrs. Powers came out and told him to wait until she spoke to her husband (T34).  After entering the house, she then appeared at the door and waved him and his colleague, Officer Mapes, into the house (Id.).

Upon entering the house, Officer Schrader said to defendant "you probably know why we're here", and defendant responded, "yes, for the inappropriate pictures on the computer" (T35).  Officer Schrader next asked defendant "where the computers were" and defendant said "follow me" (Id.).  At that point, Officer Schrader gave defendant a Miranda warning, by reading from a card which he carried in his wallet (T35-38; Government Ex. 4).  Defendant acknowledged that he understood his rights, and agreed to speak to him (T37).  Defendant showed him where the computer was located (T38).  Officer Schrader asked defendant whether there was child pornography on the computer, and defendant said that there "was probably some on there", but that he was attempting to discard it (T39).  Officer Schrader asked defendant to show him the pornography, and defendant took a disk and placed it in a Gateway computer (Id.).  Officer Schrader saw a picture of a nude 5-8 year old girl (T42).  He asked defendant if there was other child pornography, and defendant said "yes" (Id.).  Defendant then showed him a photograph of two naked boys sitting across from each other, holding each other's penises (Id.).

Officer Schrader asked defendant if he could have the disk, and defendant said "yes" (T42).  He gave Officer Schrader the disk (T43).  Officer Schrader then asked defendant if he had other child pornography, and defendant said that there was a box of media files which he

was attempting to discard (<u>Id</u>.).  Defendant showed Officer Schrader the box and handed it to

him (T43-44, 46).  Defendant gave alternative explanations for the source of this pornography,

saying that he got it from a friend, from his nephew, and that he had downloaded it from other

sites (T44).  Defendant also said that there were other towers which might contain child

pornography, and allowed Officer Schrader to take those towers (T44-47).  Defendant even

carried a computer tower to the front of the house for him (T45).

    Officer Schrader testified that he never threatened or coerced defendant, and that

defendant was not under arrest at that time (T47-48).  Defendant never asked the officers to leave

the house, nor did he ask for an attorney, nor did he say that they could not take the evidence

(T46-47).  As they left the home, defendant signed a property receipt for the items which were

taken from the home (T48; Government Ex. 2).

    On cross-examination, Officer Schrader disputed Mrs. Powers' testimony that it

was her sister, rather than she, who waved him into the house (T50-51).  He insisted that it was

Mrs. Powers (<u>Id</u>.).  He was shown two summary reports which he had prepared (Defendant's

Exs. A and B), neither of which specifically mention a photo of nude boys (T60-62).  However,

he distinctly recalled having seen that image (T65-66), and his reports do not foreclose the

possibility.  <u>See</u> defendant's Ex. A ("several images of porn appeared on the screen");

defendant's Ex. B ("Thomas did show me porn, with *one* of the pictures I observed being a

young female").

**Detective David Barrancotta**

Detective Barrancotta is employed with the Lockport Police Department (T67). He met with defendant at his home on December 29, 2004, along with Detective Scott Seekins (T68). They identified themselves, and defendant let them into his home (Id.). Defendant spoke with the detectives in his living room, told him that he had visited adult porn sites, downloaded child porn, and had tried to delete the child porn (T69). Detective Barrancotta stated at that time defendant was free to leave or to stop the interview (Id.). The detectives did not arrest defendant, nor did they threaten or coerce him (T70). Defendant did not ask for an attorney at that time (Id.). He next spoke with defendant on December 31, 2004, at which time defendant said that he had retained an attorney (T71). The detectives had no further contact with defendant thereafter (Id.).

I find all of the above witnesses to be generally credible. While there is a factual dispute between the testimony of Mrs. Powers and Officer Schrader as to whether Mrs. Powers or her sister invited the police officers into defendant's home (T30, 50-51), I do not find that inconsistency to be material on the question of consent, as Mrs. Powers maintained at all times that she did not revoke the consent which she had given for the search of her home (T21, 32).

Moreover, I note that defendant himself elected not to testify. I do not believe that his failure to testify was motivated by Fifth Amendment concerns, as defendant had previously submitted an affidavit concerning the events of December 27, 2004 (Dkt. #26-2), thereby waiving any Fifth Amendment privilege which might otherwise have existed. See United States v. O'Henry's Film Works, Inc., 598 F. 2d 313, 317 (2d Cir. 1979) ("If . . . [defendant] was free to

say nothing . . ., then the statement in his affidavit might be deemed a voluntary waiver of his Fifth Amendment privilege").

## DISCUSSION AND ANALYSIS

### A.    Warrantless Search

Defendant makes three primary arguments:  (1) that Mrs. Powers' consent was conditioned on her speaking with her husband prior to the search and that the officers ignored this instruction (Dkt. #42, pp. 5-6); (2) that defendant did not voluntarily consent to the search or seizure (Dkt. #42, pp. 7-10); (3) and that even assuming the search of 348 High Street was lawful, the subsequent warrantless search of defendant's computers and media was unlawful (Dkt. #42, pp. 10-12).

"The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." Georgia v. Randolph, 547 U.S. 103, 106 (2006). I find that defendant's wife, Donna Powers, who occupied the premises with defendant, consented to the search of the premises, and never revoked that consent (Government Ex. 1).

Defendant first argues that Mrs. Powers consent was conditioned upon the officers remaining outside of the premises until she could speak with him and that the officers violated this condition thereby nullifying her consent (Dkt. #42, pp. 5-6).  However, this argument was not raised by defendant in his initial suppression motion (Dkt. ##19, 26). Moreover, this argument is meritless.

Mrs. Powers testified that she told the officers to wait outside of the premises until she spoke to defendant (T26). Even assuming that this was a condition to her consent, there is no evidence that the officers did not abide by this request. Mrs. Powers spoke to defendant before the officers entered the premises (T18-19). At some point, her sister said "I'm going to let the police in now" and waived the officers into the premises (T30). Mrs. Powers testified that when the officers entered her home, they had her permission (T32). Based upon this evidence, I cannot conclude that the officers violated any condition Mrs. Powers placed on her consent.

Defendant also argues that he did not consent to the search or seizure of the computers (Dkt. #42, pp. 7-10). However, only "a physically present inhabitant's *express refusal* of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant". George v. Randolf, supra, at 122-123 (emphasis added). In this case there is no evidence that defendant expressly refused his consent to the search. In fact, during oral argument on November 20, 2007, his attorney admitted that defendant is "not making a claim of express refusal" (Dkt. #31).

Defendant further argues that although Mrs. Powers consented to the search of the premises, she did not consent to the subsequent search of the computer and media seized from the premises (Dkt. #42, pp. 10-12). However, this argument was never raised by defendant in his initial suppression motion (Dkt. ##19, 26). Nevertheless, this argument is likewise meritless. While the consent executed by Mrs. Powers expressly permitted only a search of the premises and seizure of property pertinent to the investigation (Government Ex. 1), when asked whether she had given the officers permission to look at the contents of the computer after it was seized, Mrs. Powers testified that she "thought that was implied", and understood that "they were going

to look at it" (T15). Defendant's claim of lack of consent is further undercut by the fact that defendant himself helped the officers carry the computer equipment toward their car (T45-6).

   For these reasons, I recommend that defendant's motion for suppression of physical evidence obtained as a result of the search be denied.

**B.**  **Suppression of Statements**

   Defendant's initial suppression motion sought to suppress the statements he made to the officers on December 27, 2004 prior to Miranda warnings being administered (Dkt. #19, p. 12). I find that there is no basis for suppressing defendant's statements. Officer Schrader testified, without contradiction, that he gave defendant Miranda warnings, and I find his testimony to be credible (T35-38). Prior to defendant's Miranda warnings being administered, I conclude that defendant was not "in custody", and therefore no Miranda warnings were required. See United States v. Badmus, 325 F. 3d 133, 139 (2d Cir. 2003) ("[B]ased on the totality of circumstances . . . in particular [the] finding that the agents informed the defendant and his wife that they were not under arrest and could ask the agents to leave at any time . . . we find that a reasonable person would have understood that he or she was not in custody.").

   In defendant's post-evidentiary hearing brief he argues that the questioning of defendant on December 29, 2004 was unlawful because "the government simply presented no evidence as to the information available to the detective that prompted him to go to the defendant's home and ask him incriminating questions" (Dkt. #42, p. 13). However, this argument was never raised in defendant's initial motion papers. In any event, this argument is meritless, as defendant's statements and the evidence seized from the premises on December 27,

2004 provided ample cause for Detectives Barrancotta and Seekins to return to the premises. Moreover, defendant let them into his home and freely spoke to them (T68-70). Therefore, I recommend that defendant's motion to suppress his statements be denied.

## CONCLUSION

For these reasons, I recommend that defendant' motion  for suppression (Dkt. ##19) be DENIED.  Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and  Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and  Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Civ. P. ("Rule") 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance.  See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the

proposed findings and recommendations to which objection is made and the basis for such

objection and shall be supported by legal authority." <u>Failure to comply with the provisions of</u>

<u>Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a</u>

<u>Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to</u>

<u>consider the objection.</u>

**SO ORDERED.**

DATED:      May 1, 2008

_Jms J m_

JEREMIAH J. MCCARTHY
United States Magistrate Judge
